IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ROBERTO LOPEZ | CRIMINAL ACTION NO.<br>1:09-CR-551-LMM |

**SENTENCING MEMORANDUM**

COMES NOW the Defendant, ROBERTO LOPEZ, by and through undersigned counsel and files this memorandum in support of his request that the Court sentence Him to 156 months (13 years)—a reasonable sentence.

**Background**

Mr. Lopez is a forty-six-year-old father of five. When he was arrested on June 27, 2024, he was living a simple life in Mexico selling cars and caring for his children. Unfortunately, the mistakes of his youth caught up to him after twenty years.

The conduct in this case occurred when he was between twenty-five and twenty-seven years old. Around that time, he first began experimenting with cocaine. Experimentation ultimately led to dependance and a snowball effect of poor choices that were outside of his typical character. Mr. Lopez has never been arrested before or since the conduct in this case.

Mr. Lopez has accepted responsibility for his actions in this case. He acknowledges the seriousness of his conduct and knows that it will result in a lengthy sentence. A sentence of 156 months (13 years) is appropriate and reasonable. Anything longer would violate the parsimony principle—the cornerstone of federal sentencing.

**<u>Argument and Citation to Authority</u>**

When determining a sentence, the Court is required to consider the factors enumerated in 18 U.S.C. § 3553:

> the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwarranted sentencing disparities; and (10) the need to provide restitution to victims.

*United States v. Talley*, 431 F.3d 784, 786 (11th Cir. 2005) (citing 18 U.S.C. § 3553(a)).

The Sentencing Guidelines promulgated by the United States Sentencing Commission provide an *advisory*, rather than mandatory, regime for determining sentences. *United States v. Crawford*, 407 F.3d 1174, 1178 (11th Cir. 2005) (citing *United States v. Booker*, 543 U.S. 220 (2005)). The sentencing ranges

produced by the Guidelines are generalizations. *United States v. Hunt*, 459 F.3d 1180, 1184-85 (11th Cir. 2006). While the Court should consult the Guidelines as a part of its analysis, the resulting range is only one factor the Court must consider in arriving at a reasonable sentence. *Crawford*, 407 F.3d at 1178-79.

In consideration of the § 3553(a) factors, the Court may determine that the guideline sentence:

> should not apply, perhaps because (as the Guidelines themselves foresee) the case at hand falls outside the "heartland" to which the Commission intends individual Guidelines to apply, U.S.S.G. § 5K2.0, perhaps because the Guidelines sentence itself fails properly to reflect § 3553(a) considerations, or perhaps because the case warrants a different sentence regardless.

*Rita v. United States*, 551 U.S. 338, 351 (2007). "[T]he sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply." *Id.*

"Extraordinary circumstances are not required to justify an outside of the guideline sentence." *Gall v. United States*, 552 U.S. 38, 47 (2007) (emphasis added). After calculation of the custody range, it is within the Court's broad discretion to impose a more lenient (or more severe) sentence than the applicable range, "provided the resulting sentence is reasonable in light of the § 3553(a) factors." *United States v. Shelton*, 400 F.3d 1325, 1334 (11th Cir. 2005). In fact, according to the United States Sentencing Commission, in 2025, in the Northern

District of Georgia, only 35.1 percent of defendants were sentenced within the guideline range.[1] Downward variances and/or departures were applied in 62.5 percent of cases. *Id*.

The ultimate command of § 3553(a) is to impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes set forth in" the statute. 18 U.S.C. § 3553(a)). This parsimony provision requires that the Court impose the minimum punishment needed to satisfy the purposes of sentencing—just punishment, deterrence, protection of the public and rehabilitation of the defendant—and serves as "the guidepost for sentencing decisions post-*Booker*." *United States v. Ferguson*, 456 F.3d 660, 667 (6th Cir. 2006).

## I. The Nature/Circumstances of the Offense and History/Characteristics of the Defendant

"It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States,* 518

[1] United States Sentencing Commission, Statistical Information Packet, Fiscal Year 2025, Northern District of Georgia, Table 8, available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/state-district-circuit/2025/gan25.pdf

U.S. 81, 113, 116 S. Ct. 2035, 2053 (1996). Underlying this tradition is the principle that "the punishment should fit the offender and not merely the crime." *Williams v. New York*, 337 U.S. 241, 247, 69 S. Ct. 1079, 1083 (1949).

Additionally, a "'court's duty is always to sentence the defendant as he stands before the court on the day of sentencing.'" *Pepper v. United States*, 562 U.S. 476, 131 S. Ct. 1229, 1242 (2011) (quoting *United States v. Bryson*, 229 F.3d 425, 426 (2d Cir. 2000)). Thus, in order to determine what sentence is reasonable in this case—what sentence is sufficient, but not greater than necessary in light of the § 3553(a) factors—it is important to consider Mr. Lopez's personal history and characteristics, and the person who he is today.

Outside of the two-year period of this indictment, Mr. Lopez has led a simple and law-abiding life. He was born in San Antonio, Texas. (PSR ¶ 73, 75). He was raised by his grandparents and describes his childhood in a positive manner. *Id.* at ¶75. Throughout his school years, he played baseball, basketball, and football. *Id.* He earned his high school diploma and began working shortly after. *Id.* at ¶86.

Shortly before his involvement in this case, he had begun working as a truck dispatcher. He also met his wife and was settling into his role as the stepfather to her children from a prior relationship. *Id.* 76. After work, he would go out with friends, drink, and party to escape from the day-to-day stresses of

supporting a family. It was during this time period that he began spending time with his co-defendant, Carlos Montemayor.

Mr. Lopez and Mr. Montemayor had a friendly relationship that initially had nothing to do with drugs. However, as they continued to party together, Mr. Lopez began experimenting with using cocaine. This likely gave Mr. Montemayor an opening to introduce Mr. Lopez to the world of drug trafficking. Mr. Lopez's involvement in this world was initially minimal. Over time, his loyalty to Mr. Montemayor led him to become more and more involved.

The situation was exacerbated by Mr. Lopez's growing dependency on cocaine. His drug use led him to make choices that were completely out of his typical character. One bad decision led to another and soon he was heavily involved in the conspiracy. He didn't see a way out until his co-conspirators began getting arrested. He fled to Mexico where he has been living a simple life selling cars and trying his best to provide for his family ever since.

Mr. Lopez understands that his conduct was serious. He also understands that the passage of time does not excuse his actions. He entered a guilty plea in this case because he wants to take responsibility for his actions and begin the process of making amends to his family. He has agreed that he should receive a lengthy sentence for his crimes. Outside of this case, he has absolutely no

criminal history. A sentence longer than 156 months (13 years) is unnecessary given his history.

## II. Deterrence

There are several factors that make it very unlikely that Mr. Lopez would ever reoffend. First, only 13.8 percent of individuals in criminal history category I are rearrested within two years.[2] Even more telling, only 11.8 percent of individuals with zero criminal history points were rearrested within two years. *Id*. at 23. Recidivism rates also decline relatively consistently as age increases. *Id*. at 12. Mr. Lopez is currently forty-six years old. He will be well over fifty by the time he is released from any sentence in this case. Offenders over 50 in criminal history category I have a recidivism rate of 6.2 percent. *Id*. at 28.

Although Mr. Lopez' personal risk of recidivism is very low, the requested sentence would provide for general deterrence as well. A thirteen-year sentence is significant and will be viewed as such by the public. It sends a message that

[2] United States Sentencing Commission, *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines* (May 2004), at 6; Available at https://www.ussc.gov/research/research-publications/measuring-recidivism-criminal-history-computation-federal-sentencing-guidelines (last accessed April 5, 2023). Recidivism rates are for all new arrests, including arrests for supervision violations, and not necessarily for new criminal conduct.

the offenses of drug trafficking and money laundering are serious and they will result in a lengthy sentence.

**Conclusion**

A sentence of 156 months is sufficient but not greater than necessary to accomplish the sentencing goals outlined in § 3553(a).

Dated: This 3rd day of September, 2024.

Respectfully Submitted,

*/s/ Caitlyn Wade*
Caitlyn Wade
Georgia Bar No. 259114
Attorney for Mr. Lopez

FEDERAL DEFENDER PROGRAM, INC.
Suite 1500, Centennial Tower
101 Marietta Street, N.W.
Atlanta, Georgia 30303
(404) 688-7530
Caitlyn_Wade@fd.org